## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KANEVIS CLEON BETHUNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 2:14-cv-01068-JHE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | | |

### MEMORANDUM OPINION[1]

Plaintiff Kanevis Cleon Bethune ("Bethune") seeks review, pursuant to 42 U.S.C. §
405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social
Security Administration ("Commissioner"), denying his application for a period of disability,
disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").   (Doc. 1).
Bethune timely pursued and exhausted his administrative remedies. This case is therefore ripe for
review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the
record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Bethune was a forty-seven year old male at the time of the Administrative Law Judge's
("ALJ") decision.  (Tr. 45, 167).  Bethune completed the eleventh grade and has past relevant
work as a collection agent.  (Tr. 208).

Bethune filed his applications for a period of disability, DIB, and SSI on October 10,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 9).

2011, alleging an initial onset date of October 1, 2008. (Tr. 167-79). The Commissioner initially denied Bethune's application, and Bethune requested a hearing before an ALJ. (Tr. 113-23). During the May 28, 2013 hearing, Bethune amended his alleged onset date to September 1, 2011. (Tr. 45). After the hearing, the ALJ denied Bethune's claim on August 22, 2013. (Tr. 16-41). Bethune sought review by the Appeals Council, but it declined her request on February 26, 2014. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On June 5, 2014, Bethune initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Bethune last met the insured status requirements of the Social Security Act on December 31, 2013, and that Bethune had not engaged in substantial gainful activity from the alleged onset date. (Tr. 21). At Step Two, the ALJ found Bethune has the following severe impairments: multiple sclerosis ("MS") and dysthymic disorder. (*Id.*). At Step Three, the ALJ found Bethune does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25).

Before proceeding to Step Four, the ALJ determined Bethune residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1).   The ALJ determined Bethune has the RFC to lift or carry 50 pounds occasionally and 25 pounds frequently; sit for a total of up to six hours in an eight-hour workday; stand and walk, combined, for a total of up to six hours in an eight-hour workday; and, thus,

perform the exertional requirements of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c); can frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl but is unable to climb ladders, ropes, or scaffolds; cannot perform in concentrated exposure to temperature extremes-either hot or cold; cannot perform in moderate exposure to job hazards; can understand and remember simple but not detailed instructions; can carry out simple instructions and sustain attention to familiar tasks for extended periods; would benefit from a flexible schedule and a separate work area or station without close proximity to others; is able to tolerate ordinary work pressures but should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands; would benefit from regular rest breaks but would be able to maintain an acceptably consistent work pace; can tolerate casual contact with coworkers and limited contact with the public; would benefit from supportive feedback and tactful, non-confrontational criticism; can adapt to infrequent, well-explained changes; and is able to set ordinary daily work goals but may need assistance with complex goals and planning. (Tr. 27-28).

At Step Four, the ALJ determined Bethune is unable to perform any past relevant work. (Tr. 36). At Step Five, the ALJ determined, based on Bethune's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Bethune could perform. (*Id.*). Therefore, the ALJ determined Bethune has not been under a disability and denied his claim. (Tr. 37).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether

substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Bethune failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Bethune's only challenge to the ALJ's decision concerns the ALJ's evaluation of some of the medical opinions from Dr. Zaremba and Dr. Beidleman. (Doc. 11 at 11-15). The ALJ, however, properly evaluated each of their opinions and substantial evidence supports this decision and his other findings.

The regulations place the decision of whether a claimant is disabled and other findings important to that decision in the hands of the ALJ, not doctors. 20 C.F.R. §§ 404.1527(d), 416.927(d); *see Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010). Consistent with this principle, the Eleventh Circuit has held that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Here, the ALJ properly exercised his authority to weigh the evidence and determine whether Bethune was disabled when he rejected Dr. Zaremba's opinion and a portion of Dr. Beidleman's opinion.

First, Dr. Zaremba and Dr. Beidleman are not treating physicians, but one-time consultative examiners. Dr. Zaremba saw Bethune once at the request of his attorney for a physical consultative examination on June 11, 2013. (Tr. 489-93). Dr. Beidleman saw Bethune once at the request of the agency on December 15, 2011, for a psychological consultative examination. (Tr. 321-23). Because these physicians saw Bethune on only one occasion, they

are not treating physicians, and their opinions are not entitled to any deference.[4]   *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 20 C.F.R. §§ 404.1502, 416.902.

Dr. Zaremba opined, generally, that Bethune's diagnoses of MS, migraine headaches, Gastric GIST tumors, and GI bleeding caused pain and fatigue such that he could not work.  (Tr. 489-97).  The ALJ gave Dr. Zaremba's opinion little weight because it was inconsistent with other record evidence, including examination findings from Bethune's treating physicians and another physical consultative examination.  (Tr. 35).  The ALJ provided a detailed explanation of his findings, pointing to specific inconsistencies between Dr. Zaremba's examination and opinion and the other evidence of record.  The ALJ stated that Dr. Zaremba diagnosed Bethune's MS as relapsing-unremitting; however, Dr. Bashir, a specialist in that field, diagnosed MS relapsing-remitting, consistent with evidence of no acute exacerbation since October 2011.  (Tr. 35, 333, 491).  Additionally, Dr. Zaremba characterizes Bethune as having chronic neck and back pain due to MS-related spinal cord lesions in direct contradiction to Dr. Bashir's findings that Bethune's back complaints are unrelated to MS.  (Tr. 35, 359, 391, 491).  Dr. Zaremba's characterization of Bethune's migraines as moderately severe is consistent with the other evidence of record; however, as noted, those headaches do not occur as frequently or last as long as Bethune has alleged.  (Tr. 22, 34, 35, 264-73, 296-98, 317-19, 325, 333-49, 356-59, 363-70, 384-91, 404-07, 431, 435, 440-44, 483, 491).  Dr. Zaremba also diagnosed GI bleeding

---

[4] Although not entitled to deference, the ALJ does have a duty to make clear the weight accorded to each item of evidence and the reasons for the decision. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  This enables a reviewing court to determine whether the ultimate decision is based on substantial evidence.  *Id.*  A statement that the ALJ carefully considered all the testimony and exhibits is not sufficient.  *Id.*  A decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding other contrary evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).  The ALJ expressly states the weight accorded to the medical opinions and his reasoning behind such decisions.  (Tr. 35).

secondary to gastric tumor; however, the tumor was resected in July 2012 with no evidence of any GI bleeding since then. (Tr. 35, 412-17, 454, 486, 483, 486, 491). Additionally, Dr. Zaremba's opinion that Bethune has residual abdominal pain and left axillar pain is inconsistent with his own findings on examination as well as those of Bethune's treating surgical oncologist. (Tr. 35, 417, 468, 483, 485, 490-91). Furthermore, Dr. Zaremba's opinions on the severity of Bethune's pain and fatigue/weakness are inconsistent with the reports made to treating providers as well as Bethune's medication history. Aside from the single isolated SPIR episode,[5] there is no evidence that the claimant has reported any adverse side effects from his medications. (Tr. 35, 264, 276, 404-05, 417, 424-25, 435, 468, 485, 494-97). This list of inconsistences the ALJ observed constitute substantial evidence in support of the ALJ's decision to reject Dr. Zaremba's opinion. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ also properly assessed Dr. Beidleman's opinions. (Tr. 35). Dr. Beidleman diagnosed Bethune with dysthymic disorder and opined that "[h]e would have difficulty functioning completely independently, but should be able to remember simple instructions. He should be able to respond appropriately to fellow employees and supervisors, but may have difficulty coping with significant work pressures." (Tr. 323). The ALJ gave considerable weight to Dr. Beidleman's opinions, except his opinion that Bethune would have difficulty functioning completely independently. (Tr. 35-36). The ALJ rejected this portion of his opinion because it was inconsistent with Bethune's history and the moderate nature of his mental impairment. (Tr. 35-36). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Despite finding Bethune would have difficulty living independently, Dr. Beidleman assigned Bethune a Global Assessment of

---

[5] "SPIR" refers to a "sudden post-injection reaction." (Tr. 424). Records indicate Bethune experienced a SPIR episode on June 29, 2012, after a copaxone injection. (*Id.*). The record further explains that this type of reaction to a copaxone injection is "a benign adverse effect not causing any long term organ or systemic dysfunction." (Tr. 425).

Functioning ("GAF") score indicating no more than moderate symptoms or limitations.   (Tr. 323); *see Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. 2000, Text Rev.).   The moderate nature of Bethune's mental impairment is further evidenced by his lack of mental health treatment and normal mental status examinations.   (Tr. 27, 34, 443, 485).   Bethune's history shows he lived independently until he moved back home after losing his job due to physical impairments, and Bethune stated that currently he remained independent in his activities of daily living.   (Tr. 56, 322, 325).   The ALJ did not err in rejecting Dr. Beidleman's opinion that Bethune would have difficulty functioning independently because the opinion was inconsistent with Dr. Beidleman's own report and other evidence of record.   *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Instead of addressing the inconsistencies the ALJ cited when he rejected Dr. Zaremba and Dr. Beidleman's opinions, Bethune argues that their opinions are supported by the record.   (Doc. 11 at 11-12).   It is the ALJ's duty to weigh the evidence and resolve inconsistencies, 20 C.F.R. §§404.1520(b), 416.9209b(b), and the fact that some evidence may exist to support their opinions is not dispositive.   Even if the evidence appears against the ALJ's decision or if the Court were to weigh the evidence differently, the ALJ's decision must be affirmed if it is supported by substantial evidence.   *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).   As demonstrated above, substantial evidence supports the ALJ's decision to discount Dr. Zaremba and Dr. Beidleman's opinions.

Finally, Bethune takes issue with the ALJ's reliance on the opinions of state agency physician R. Glenn Carmichael, but cites no authority to show that the ALJ's reliance on a non-examining physician's opinion is improper.   (Doc. 11 at 12).   As part of the Agency's evaluation, Dr. Carmichael reviewed Bethune's medical history and developed a physical residual functional

capacity assessment.  (Tr. 92-94, 105-07).  It is completely proper for an ALJ to rely upon non-examining physician opinions to support his decision.  *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  Here, the ALJ properly relied on Dr. Carmichael's opinion, along with the rest of the evidence, to find Bethune was not disabled.  (Tr. 28-36).  The ALJ expressly notes that he accords "significant weight" to Dr. Carmichael's opinions regarding Bethune's physical limitations because they are consistent with the result of multiple examinations documenting little to no abnormality aside from some mild alterations in sensation and mild weakness in Bethune's non-dominate upper extremity.  (Tr. 35).  To the extent Bethune contends Dr. Carmichael's opinion is not in the record, that argument is unfounded.  Dr. Carmichael's opinion, a physical residual functional capacity assessment, appears in the record at page 92 through 94, and at 105-107.

An ALJ is free to reject the opinion of any physician when evidence supports a contrary conclusion.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  That is precisely what the ALJ did here when he rejected Dr. Zaremba's opinion and a portion of Dr. Beidleman's opinion because they were inconsistent with the other record evidence. The ALJ expressly states the weight accorded to the medical opinions and his reasoning behind such decisions.  (Tr. 35).

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Bethune's claim for a period of disability, disability insurance benefits, and supplemental security is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 28th day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE